# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

   v.                                                                Case No. 16-CR-7

**TERRELL SHANKLE**
        **Defendant.**

## DECISION AND ORDER

Defendant Terrell Shankle moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). For the reasons that follow, I deny his motion.

### I. FACTS AND BACKGROUND

A jury convicted defendant of sex trafficking minor and adult females by means of force, fraud, and coercion. His conduct spanned a roughly six year period; he targeted vulnerable young women and girls, bringing them into his stable, requiring them to turn their earnings over to him, and enforcing his "rules" by violence and threat of violence. He beat the victims with his fists and other objects, including a so-called "pimp cane," stomped on them, choked them, threatened them with a firearm, and humiliated them. (R. 105 at 19-20; PSR ¶¶ 9-14.)

Forty years old at the time of sentencing, defendant had compiled a significant prior record, including convictions for possession with intent to deliver marijuana, possession with intent to deliver cocaine, manufacture/deliver cocaine, possession of THC, bail jumping, and possession of drug paraphernalia. He was on supervision during much of the time he was committing the instant offenses. (R. 105 at 20; PSR ¶¶ 132-36.)

The pre-sentence report calculated an advisory guideline range of life, and at the

sentencing hearing the government recommended a life sentence. (R. 105 at 19.) Defendant asked for 15 years, the mandatory minimum on several of the counts of conviction. (R. 105 at 9.)

On consideration of the factors under 18 U.S.C. § 3553(a), I imposed a sentence of 300 months. I determined that a lengthy prison term was necessary to reflect the seriousness of the offenses, which involved brutality, degradation, and cruelty; to promote respect for the law and deter others from involvement in this vicious business, which defendant and other pimps tried to glorify and portray as lucrative; and to protect the public from further crimes of the defendant, given his prior record, the fact that previous prison terms and community supervision failed to stop him, and the predatory behavior involved in this case. (R. 105 at 21.) Defendant's request for a sentence at the minimum overlooked the multiple victims involved, the manner in which defendant preyed on vulnerable girls and young women, the egregious abuse he inflicted on them, and the length of time he engaged in this conduct. (R. 105 at 24-25.)

In imposing a sentence below the guideline range, I noted that defendant's criminal history was somewhat dated, consisting primarily of low level drug offenses, and that his longest previous sentence was 30 months. See United States v. Qualls, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005) ("It is appropriate for a court, when considering the type of sentence necessary to protect the public and deter future misconduct, to note the length of any previous sentences imposed. Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to re-offend."). I further considered defendant's age, noting that he would be released at an age when, statistically, recidivism tends to decline. See United States Sentencing Commission, The Effects of Aging on Recidivism Among Federal

2

Offenders (Dec. 2017). Finally, I considered the notion of "marginal deterrence"—that the harshest sentences should be reserved for the most culpable behavior. As serious as these crimes were, a life sentence would have left no room for sex traffickers who, for instance, killed or caused permanent, debilitating physical injuries to their victims. See United States v. Newsom, 402 F.3d 780, 785-86 (7th Cir. 2005); see also United States v. Patrick, 707 F.3d 815, 820 (7th Cir. 2013). (R. 105 at 22-24.)

Defendant filed a notice of appeal, but the Seventh Circuit dismissed his direct appeal as frivolous. United States v. Shankle, 756 Fed. Appx. 633 (7th Cir. 2019). Defendant is currently serving his sentence at FCI Pekin, with a projected release date of May 4, 2037.[1] He seeks compassionate release based on the COVID-19 pandemic and his health issues. The government opposes release. Defendant has replied, and the matter is ready for decision.

## II. DISCUSSION

**A.     Compassionate Release Standards**

Section 3582(c)(1)(A) provides, in pertinent part:

[T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

---

[1] https://www.bop.gov/inmateloc/ (last visited December 2, 2021).

3

18 U.S.C. § 3582(c)(1)(A)(i).

A defendant seeking release must first make a request to the warden before applying to the court. If this "exhaustion" requirement is satisfied, the defendant must then demonstrate an "extraordinary and compelling" reason warranting a reduction in his sentence. Finally, if the defendant has supplied such a reason, the court must determine whether, under the applicable 18 U.S.C. § 3553(a) factors, the sentence should be reduced. See United States v. Thacker, 4 F.4th 569, 576 (7th Cir. 2021).

**1.   Exhaustion**

Before 2018, compassionate release required a motion from the BOP. United States v. Sanford, 986 F.3d 779, 781 (7th Cir. 2021). The First Step Act of 2018 amended the compassionate release statute to permit the court to adjudicate a motion directly from the defendant. However, the defendant must first present his request for compassionate release to the warden and exhaust administrative appeals (if the request is denied) or wait 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. Id. at 781-82. The Seventh Circuit has held that, while this "exhaustion" requirement is not jurisdictional, it is a mandatory claim-processing rule which must be enforced if raised by the government. Id. at 782.

**2.   Extraordinary and Compelling Reasons**

The statute does not define the term "extraordinary and compelling reasons." Rather, Congress instructed the Sentencing Commission, in promulgating general policy statements regarding the sentence modification provisions in § 3582(c)(1)(A), to describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria

4

to be applied and a list of specific examples. See 28 U.S.C. § 994(t).[2] The Commission's policy statement provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1)    (A) extraordinary and compelling reasons warrant the reduction . . .
>
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. The commentary to the policy statement indicates that extraordinary and compelling reasons exist under these circumstances:

> (A) Medical Condition of the Defendant.—
>
> > (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> >
> > (ii) The defendant is—
> >
> > > (I) suffering from a serious physical or medical condition,
> > >
> > > (II) suffering from a serious functional or cognitive impairment, or
> > >
> > > (III) experiencing deteriorating physical or mental health because of the aging process,
> > >
> > > that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from

---

[2]Congress did state that: "Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." Id.

5

> which he or she is not expected to recover.

(B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

The Commission has not updated the policy statement, which purports to require a motion from the director of the Bureau of Prisons, see U.S.S.G. § 1B1.13 cmt. n.4, since the passage of the First Step Act, which allowed defendants to bring their own motions. Accordingly, "because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of §3582(c)(1)(A) does not curtail a district judge's discretion." United States v. Gunn, 980 F.3d 1178, 1180 (7th Cir. 2020); see also United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020) ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion.").

Giving the statutory terms their common meaning, a defendant seeking compassionate

6

release must demonstrate that his situation is extraordinary, i.e., beyond what is usual, customary, or regular, and his need for release compelling, i.e., irreparable harm or injustice will result if relief is not granted. United States v. Scott, 461 F. Supp. 3d 851, 862 (E.D. Wis. 2020); see also Gunn, 980 F.3d at 1180 (noting that the Commission's analysis can guide the court's exercise of discretion without being conclusive). In the context of the COVID-19 pandemic, courts have found that modification may be warranted if the prisoner demonstrates that he is particularly vulnerable to the virus based on his age, health status, or other specific circumstances. E.g., United States v. Dover, No. 14-CR-196, 2020 U.S. Dist. LEXIS 133340, at *16-17 (E.D. Wis. July 28, 2020). As the Seventh Circuit has more recently noted, however,

> for the many prisoners who seek release based on the special risks created by COVID-19 for people living in close quarters, vaccines offer relief far more effective than a judicial order. A prisoner who can show that he is unable to receive or benefit from a vaccine still may turn to this statute, but, for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an "extraordinary and compelling" reason for immediate release.

United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021).

### 3. Section 3553(a) Factors

Finally, if the court decides that extraordinary and compelling reasons have been shown, it must also consider the applicable § 3553(a) factors to determine whether the sentence should be modified. See United States v. Saunders, 986 F.3d 1076, 1078 (7th Cir. 2021) ("Because of the importance of the § 3553(a) factors, courts are not compelled to release every prisoner with extraordinary and compelling health concerns."). Those factors include: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for the sentence imposed to provide just punishment, deterrence, protection of the public, and correctional treatment; (3) the kinds of sentences available; (4) the sentencing guideline range;

7

(5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution to the victims of the offense. 18 U.S.C. § 3553(a). In some cases, a court may find that the relevant § 3553(a) factors outweigh the extraordinary and compelling reasons warranting compassionate release and/or that release would undermine the goals of the original sentence. United States v. Bartlett, No. 06-CR-273, 2020 U.S. Dist. LEXIS 101393, at *13-14 (E.D. Wis. June 9, 2020).

**B.      Defendant's Motion**

    **1.      Exhaustion**

Defendant made an administrative request for compassionate release, which the warden denied in March 2021. (R. 119 at 5, R. 119-1 at 7.) The government agrees that he has satisfied the exhaustion requirement. (R. 123 at 7.)

    **2.      Extraordinary and Compelling Reasons**

In his motion, defendant indicates that he has suffered from asthma since birth. (R. 119 at 1.) Since he has been incarcerated, he has used a CPAP breathing machine. (R. 119 at 1, R. 119-1 at 4.) He tested positive for COVID-19 in December 2020, losing his sense of taste and smell and experiencing shortness of breath. He uses an Albuterol inhaler as needed for shortness of breath. (R. 119 at 1.) He also takes a number of medications for high blood pressure, high cholesterol, and migraine headaches. (R. 119 at 2, R. 119-1 at 1-2.) He further indicates that he is obese, standing 5'9" and weighing 240 pounds.[3] (R. 119 at 2, R. 119-1 at

---

[3] Defendant indicates he has "a BMI calculated at 40% and greater." (R. 119 at 2.) A person of defendant's measurements has a BMI of 35.4. A BMI above 30 qualifies as obese. https://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm (last visited December 2, 2021). A BMI (body mass index) over 40 is categorized as severe obesity. See https://www.cdc.gov/obesity/adult/defining.html (last visited December 2, 2021).

8

3.) Defendant contends that given his asthma and obesity he is at high risk from COVID-19 in prison.[4] He states that FCI Pekin has seen an explosion of COVID cases in the past. He concludes that these circumstances amount to an extraordinary and compelling reason for release. (R. 119 at 2.)

While the CDC has acknowledged that persons with moderate to severe asthma, obesity, and (possibly) hypertension are at higher risk of severe illness from COVID-19,[5] defendant has been fully vaccinated against COVID-19. (R. 123 at 11; R. 125 at 18, 25-26, 49.) As the Seventh Circuit has noted, "the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." Broadfield, 5 F.4th at 803; see also United States v. Kurzynowski, 17 F.4th 756, ___ (7th Cir. 2021) ("Because Kurzynowski is vaccinated, he is ineligible for relief on remand."); United States v. Ugbah, 4 F.4th 595, 597 (7th Cir. 2021) ("Today, however, vaccines provide a much better defense against infection than any judicial order could do.").

For the sake of completeness, I note that defendant fails to demonstrate that his asthma is "moderate to severe." The medical evidence shows that defendant's asthma and hypertension are well-controlled with medication (R. 125 at 2, 31, 62, 66, 87),[6] and nothing in

---

[4]Later in his motion, defendant notes that a person's risk of hospitalization and death increases as he ages. (R. 119 at 6, R. 119-1 at 8.) Defendant is now 44 years old (see PSR ¶ 150), well short of the highest risk categories. He also states that the virus is more deadly for men (R. 119 at 6-7), but he develops no argument that he should be released simply because of his gender.

[5]https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited December 2, 2021).

[6]On occasions when his blood pressure was elevated, providers suspected defendant was not taking his medication. (R. 125 at 31, 62.) He also denied associated symptoms such as headache, dizziness, shortness of breath, and palpitations or chest pain. (R. 125 at 73.)

9

the record suggests that he experiences any significant health issues related to his weight, with providers recommending lifestyle modification (R. 125 at 62). The medical evidence also suggests that defendant quickly recovered from his previous COVID-19 infection without significant lasting effects. (R. 119-1 at 5-6; R. 125 at 14, 27-28, 38-39, 41.) Defendant notes the possibility of reinfection (see R. 119 at 7), but that is too speculative a basis for relief in this case. See United States v. Hicks, No. 18-CR-227, 2020 U.S. Dist. LEXIS 213100, at *17 (E.D. Wis. Oct. 7, 2020) (noting that under these circumstances the court should consider the prisoner's specific medical problems and their severity, the course of his recovery from the virus, whether he displays any lingering symptoms or effects, and the conditions at his particular facility). Finally, while FCI Pekin experienced a surge of cases in late 2020 (R. 119 at 6), the BOP currently reports just two positive inmates and three positive staff members at this facility; no inmates or staff members have died;[7] and 132 staff members and 897 inmates have been vaccinated.[8]

Defendant disputes none of these facts in reply. Instead, he notes the possibility of breakthrough infections in vaccinated persons, as well as the increased transmissibility of the Delta variant. (R. 128 at 2.) However, he presents no evidence or authority for granting release based on these possibilities.

Defendant also contends in reply that FCI Pekin has already proven its inability to control the virus, but he again relies in data from late 2020. (R. 128 at 3.) As indicated above, the figures now, with widespread vaccination, are far different. He criticizes the BOP's practices

---

[7]https://www.bop.gov/coronavirus/ (last visited December 2, 2021).

[8]https://www.bop.gov/coronavirus/ (last visited December 2, 2021).

and procedures (R. 128 at 5), but he fails to demonstrate that any flaws require his immediate release. He contends that long-haul symptoms are ignored (R. 128 at 6), but he presents no evidence that he experiences such symptoms, and his prison medical records demonstrate that he receives regular care. He cites a number of district court cases from 2020 holding that prisoners may still move for release after contracting and recovering from the virus (R. 128 at 8), but those case are of limited value in late 2021. He cites a more recent case in which a district court granted release to a vaccinated prisoner, but the inmate there presented specific medical evidence that the vaccine might not be effective for her and that conditions at her prison were "alarming." United States v. Pappa, No. 95-00084-CR, 2021 U.S. Dist. LEXIS 75976 (S.D. Fla. Apr. 1, 2021). Defendant presents no such evidence here.

Defendant reiterates that he suffers from asthma, high blood pressure, high cholesterol, and moderate obesity, but he presents no evidence demonstrating the severity of these conditions or suggesting that they are not "well controlled." (R. 128 at 9.) He cites an article from August 2020 speculating that vaccines may not be effective on people with obesity, but more recent reports indicate they are.[9] Finally, defendant cites a number of news reports about the Delta variant, but he links none of these reports to his own case.[10] (R. 128 at 11-12.)

In sum, defendant fails to demonstrate any extraordinary and compelling reasons for release.

### 3. Section 3553(a) Factors

---

[9]https://www.medpagetoday.com/infectiousdisease/covid19vaccine/93463 ("Yes, COVID Vaccines Work in People With Obesity— The Obesity Society recommends any of the three available vaccines in the U.S.") (last visited December 2, 2021, citing July 7, 2021 article).

[10]He also attaches an affidavit from a California doctor filed in another case in March 2020. (R. 128-2.) This has little relevant here.

11

Even if he could demonstrate extraordinary and compelling reasons, I would deny defendant's motion under § 3553(a). As discussed above, defendant committed heinous crimes, and he has served barely 25% of the sentence I found necessary. See United States v. Sullivan, No. 20-2647, 2021 U.S. App. LEXIS 24143, at *7 (7th Cir. Aug. 13, 2021) ("[The court] permissibly noted that Sullivan had served only a portion of his already below-Guidelines sentence."); Saunders, 986 F.3d at 1078 (finding that the district court "permissibly ruled that excusing him from two-thirds of his sentence for this crime would not promote respect for the law"). As the government discusses in its response, defendant's abuse of the victims in this case included strangling one to near unconsciousness, beating another so severely in front of a child that the child wet his pants, and striking another in the head with a brick after she tripped and fell while trying to run away from him. (R. 123 at 15; PSR ¶ 32, 26, 53.) Further examples are unnecessary. Releasing him now would depreciate the seriousness of these crimes.

Given the extent of his criminal conduct in this case, and his prior record, releasing defendant now would also pose a danger to the public. Defendant notes that he has used his time in prison wisely, maintaining a job, completing programming, avoiding discipline, and developing a release plan. (R. 119 at 9-10.) While this is to his credit, it cannot overcome the danger reflected by his conduct in this case and his prior record. See United States v. Land, 845 Fed. Appx. 461, 463 (7th Cir. 2021) ("The court reasonably balanced those factors when it ruled that the nature of Land's offense (which led to the death of a user of heroin), his undeterred habit of using and selling heroin despite past imprisonment, and the large, unserved portion of his current prison term outweighed his recent rehabilitation and education efforts."). Defendant also contends that the pandemic has made prison far more punitive than could have been expected when he was sentenced in 2018. (R. 119 at 9.) However, other than noting that

12

he actually contracted COVID-19, he develops no argument as to how that harshness has impacted him, specifically. Nor does he explain why the alteration of prison conditions should excuse him from serving 75% of his sentence.

In reply, defendant cites portions of his lawyer's closing argument at trial and denies engaging in illegal activities with a minor. (R. 128 at 13-14.) "A motion under § 3582(c)(1)(A) is not an appropriate vehicle for relitigating the facts underlying his case." United States v. Baugus, No. CR 02-133-BLG-SPW, 2020 U.S. Dist. LEXIS 66635, at *1 (D. Mont. Apr. 15, 2020); see also United States v. Wentzel, 858 Fed. Appx. 943 (7th Cir. 2021).

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that defendant's motion for compassionate release (R. 119) is denied.

**IT IS FURTHER ORDERED** that defendant's motion for extension of time to file a reply (R. 127) is granted.

**FINALLY, IT IS ORDERED** that the government's motion to seal defendant's medical records (R. 124) is granted.

Dated at Milwaukee, Wisconsin, this 3rd day of December, 2021.

/s/ Lynn Adelman
LYNN ADELMAN
District Judge